1                                                                                               HONORABLE RONALD B. LEIGHTON

2

3

4

5

6

7

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

8

| | |
|---|---|
| WENDY SNELL, | CASE NO. C13-5786 RBL |
| Plaintiff, | ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| NORTH THURSTON SCHOOL DISTRICT, et al., | |
| Defendants. | |

THIS MATTER is before the Court on Defendant North Thurston School District's Motion for Summary Judgment [Dkt. #35]. Plaintiff Wendy Snell is suing the District and Dr. Marilyn de Give, the District's Executive Director of Student Support Services, on her own behalf and on behalf of S.Y., her minor daughter.

S.Y. is an insulin-dependent diabetic with developmental delays and hearing loss. Snell alleges the District and Dr. de Give discriminated against her daughter by failing to provide a qualified adult to monitor her blood sugar levels during the school day. Snell also alleges the District failed to provide her daughter a voice amplification device so that she could understand classroom instructions. Snell brings her discrimination claims under Title II of the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act, and the Washington Law

Against Discrimination (WLAD).[1] Snell asserts that she and her daughter have suffered emotional distress and that her daughter has lost educational opportunities as a result of the District's discrimination.

The District seeks summary judgment on Snell's claims, arguing Snell cannot prove that it acted with intentional discrimination or deliberate indifference, and so her claims fail as a matter of law. The District also argues that it reasonably offered to transfer S.Y. to a different school where a nurse could monitor her blood sugar levels, but Snell refused this reasonable accommodation. Snell contends that the District's proffered accommodation of a transfer to another school was unreasonable and that the District was aware of S.Y.'s diabetic monitoring needs but acted with deliberate indifference in failing to accommodate her medical condition.

## I. FACTUAL SUMMARY

S.Y. is an insulin-dependent brittle diabetic[2] with developmental delays, kidney disease, and profound hearing loss in her right ear. She began attending Meadows Elementary in the North Thurston School District as a kindergartner in 2010. Due to her diabetes, S.Y.'s endocrinologist ordered that her blood sugar be tested every two or three hours. S.Y. also requires a voice amplification system to assist her in understanding classroom instruction.

In preschool and kindergarten, Snell and S.Y.'s maternal grandmother served as Parent Designated Adults (PDAs) for S.Y., monitoring her blood sugar levels throughout the school day. In an effort to increase S.Y.'s independent development in school, Snell wanted the District

---

[1] Snell's original complaint included claims under 42 U.S.C. § 1983 as well as the Individuals with Disabilities in Education Act (IDEA) [Dkt. #1 at ¶¶ 5.2–5.6]. The Court dismissed her § 1983 claim [Dkt. #25], and Snell has clarified in her Response to the District's Motion for Summary Judgment that she is not bringing an independent cause of action under the IDEA [Dkt. #41 at 17].

[2] Brittle diabetics tend to have extreme fluctuations in blood sugar levels and need more care than other diabetics as a result of these fluctuations.

to assume responsibility for monitoring S.Y.'s blood sugar levels heading into S.Y.'s first grade year. Snell attempted to engage the District towards this goal in the summer after her daughter's kindergarten year, but the District failed to develop a plan for S.Y.'s diabetic care over the summer even though it knew of her medical condition.

Despite Snell's proactive attempts, when she brought S.Y. to the first day of first grade, Dr. de Give informed Snell that S.Y. did not have a valid Individual Health Plan and would not be allowed to attend school unless Snell and her mother continued to serve as PDAs. Snell and her mother capitulated to serve as PDAs, but Snell immediately reiterated her request that the District take over S.Y.'s diabetic care.

In the following weeks, the District failed to complete arrangements to provide blood sugar monitoring for S.Y., so Snell and her mother continued to serve as PDAs. Frustrated by the District's inaction, on October 4, 2011, Snell gave Dr. de Give two weeks written notice that neither Snell nor her mother would continue to serve as S.Y.'s PDA as of October 20, 2011. The letter detailed Snell's expectation that the District would provide appropriate medical care for her daughter, including a licensed health care provider to monitor S.Y.'s blood sugar levels during the school day.

On October 17, 2011, Dr. de Give informed Snell that S.Y. would be transferred to Lacey Elementary, effective October 20, 2011, where a full time licensed practical nurse could provide S.Y. the medical attention she needs.[3] Although Snell was not opposed to the possibility of S.Y. attending a different school, she had questions about the qualifications and other responsibilities of the Lacey Elementary nurse. Snell was concerned the abrupt two-day transition would pose

---

[3] Lacey Elementary School is approximately four miles away from Meadows Elementary. Both schools are located in Lacey, Washington.

1  challenges to S.Y.'s education and well-being. Dr. de Give was dismissive of these concerns.

2  Dissatisfied, Snell ultimately refused the District's proposal to transfer S.Y. to Lacey, and S.Y.

3  continued to attend Meadows with her mother and grandmother serving as PDAs.

4      To compensate for S.Y.'s hearing loss, the District provided several FM voice

5  amplification systems, but none of the systems functioned properly. Eventually, the District

6  seated a paraeducator next to S.Y. in the classroom and tasked her with making sure S.Y.

7  understood her teacher's instructions.

8      Snell remained unhappy with the District's treatment of her daughter, and her

9  relationship with the District deteriorated through the remainder of October and into November

10  2011. In mid-November, communications between Snell and the District broke down. S.Y.'s

11  parents stopped participating with the District on developing S.Y.'s new Individualized

12  Education Program (IEP). S.Y.'s attendance at Meadows Elementary declined steadily in

13  November, and in January, Snell informed the District that S.Y. would not return to school. Snell

14  formally withdrew her daughter from the District in early February 2012, and enrolled S.Y. in

15  the Washington Virtual Academy home school program.

16  **A.  Procedural Background.**

17      Snell filed a due process hearing request under the Individuals with Disabilities

18  Education Act (IDEA) in October 2012. An Administrative Law Judge (ALJ) conducted a

19  hearing on Snell's IDEA claims spanning six days from November 2012 through January 2013.

20  In May 2013, the ALJ determined that the District had failed to provide S.Y. with a free

21  appropriate public education, as required by the IDEA, and awarded her 520 hours of private

22  academic tutoring. Snell subsequently filed this lawsuit, but it was stayed pending the District's

23  appeal of the ALJ's decision to this Court. The Court affirmed the ALJ's decision in April 2014,

24

1   concluding that the award of compensatory education was appropriate. *See Snell v. North*

2   *Thurston School District*, 3:13-cv-05488-RBL; [Dkt. #19].

3       Snell has exhausted her administrative remedies under the IDEA. She now seeks

4   compensatory damages for violations of the ADA, Rehabilitation Act, and WLAD. Snell claims

5   damages for lost educational opportunities, humiliation, and mental and emotional distress.

6       The District argues that there is no evidence supporting Snell's intentional discrimination

7   or deliberate indifference claims under the ADA and Rehabilitation Act, and that she cannot

8   prevail on these claims. It also seeks summary judgment on Snell's WLAD claim, because Snell

9   cannot identify how her daughter did not receive services comparable to non-disabled students.[4]

10  Snell responds that email correspondence between Dr. de Give and District employees provides

11  evidence supporting her claim of deliberate indifference. She also asserts that the District's

12  proposed transfer of S.Y. to Lacey Elementary was unreasonable.

## II. DISCUSSION

14  **A.  Summary Judgment Standard.**

15      Summary judgment is appropriate when, viewing the facts in the light most favorable to

16  the non-moving party, there is no genuine issue of material fact that would preclude summary

17  judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to

18  summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to

19  interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for

20  trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of

21  evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v.*

22  ───────────────

23      [4] The District has also moved to strike supplemental materials filed by Snell contained in
    Dkt. #43. Because the Court afforded additional time to the District to respond to the
24  supplemental materials, the point is moot.

*Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

**B. The Americans with Disabilities Act and the Rehabilitation Act.**

Snell asserts related claims under Title II of the ADA and Section 504 of the Rehabilitation Act. She claims the District's failure to provide for her daughter's diabetic and hearing needs violates both statutes. The District argues that it is only required to offer reasonable accommodations under the ADA and Section 504, and that it did so in providing S.Y. with a paraeducator and in attempting to transfer S.Y. to Lacey Elementary where she could receive diabetic monitoring from a nurse. The District also argues that Snell offers no evidence of intentional discrimination or deliberate indifference needed to recover under the ADA or Section 504.

Both statutes are designed to prohibit discrimination on the basis of disability. *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002). "The ADA applies only to public entities, whereas the [Rehabilitation Act] proscribes discrimination in all federally-funded programs." *Id.* Because "[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act," Snell's claims under the two statutes will be discussed together. *Zukle v. Regents of Univ. of California*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999); *see also Mangum v. Renton School Dist.*, No. C10-1607RAJ, 2013 WL 328073, at *3 (W.D. Wash. Jan. 29, 2013) ("Given the similarity between Title II and Section 504, courts typically do not separately analyze claims arising under them.").

1    Section 504 of the Rehabilitation Act forbids public schools from discriminating against

2    people with disabilities. *See Mark H. v. Hamamoto*, 620 F.3d 1090, 1097 (9th Cir. 2010). The

3    relevant language of Section 504 provides "no otherwise qualified individual with a disability in

4    the United States . . . shall, solely, by reason of her or his disability, be excluded from the

5    participation in, be denied the benefits of, or be subjected to discrimination under any program or

6    activity receiving Federal financial assistance…." 29 U.S.C. § 794(a). To establish a violation of

7    Section 504, a plaintiff must demonstrate (1) she is handicapped within the meaning of the

8    Rehabilitation Act; (2) she is otherwise qualified for the benefit or services sought; (3) she was

9    denied the benefit or services solely by reason of her handicap; and (4) the program providing

10   the benefit or services receives federal funding. *See Lovell*, 303 F.3d at 1052. "An organization

11   that receives federal funds violates [Section] 504 if it denies a qualified individual with a

12   disability a reasonable accommodation that the individual needs in order to enjoy meaningful

13   access to the benefits of public services." *Hamamoto*, 620 F.3d at 1097 (citing *Alexander v.

14   Choate*, 469 U.S. 287, 301–02 (1985)).

15   Title II of the ADA is modeled on the Rehabilitation Act. Under Title II, "no qualified

16   individual with a disability shall, by reason of such disability, be excluded from participation in

17   or be denied the benefits of the services, programs, or activities of a public entity, or be subjected

18   to discrimination by any such entity." 42 U.S.C. § 12132. To establish a violation of Title II, a

19   plaintiff must show that (1) she is a qualified individual with a disability; (2) she was excluded

20   from participation in or otherwise discriminated against with regard to a public entity's services,

21   programs, or activities, and (3) such exclusion or discrimination was because of her disability.

22   *Lovell*, 303 F.3d at 1052 (citing *Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*, 114 F.3d

23   976, 978 (9th Cir.1997)).

24

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 7

1    Additionally, "[t]o recover monetary damages under Title II of the ADA or the

2    Rehabilitation Act, a plaintiff must prove intentional discrimination on the part of the

3    defendant." *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001). The Ninth Circuit

4    applies a deliberate indifference standard for intentional discrimination. *See id.*; *see also Mark H.*

5    *v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008). Deliberate indifference requires both (1)

6    knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act

7    upon that likelihood. *See Duvall*, 260 F.3d at 1139 (citing *City of Canton v. Harris*, 489 U.S.

8    378, 379 (1988)). The Ninth Circuit further articulated the deliberate indifference standard in

9    *Lovell*: "The first element is satisfied when the public entity has notice that an accommodation is

10    required. The second element is satisfied if the entity's failure to act [is] a result of conduct that

11    is more than negligent and involves an element of deliberateness." *Lovell*, 303 F.3d at 1056

12    (internal quotations and citations omitted). Under the second element of the deliberate

13    indifference standard, "a public entity does not act by proffering just any accommodation: it

14    must consider the particular individual's need when conducting its investigation into what

15    accommodations are reasonable." *Id.* "Thus, a public entity can be liable for damages … if it

16    intentionally or with deliberate indifference fails to provide meaningful access or reasonable

17    accommodation to disabled persons." *Lemahieu*, 513 F.3d at 938.

18    **C.  Intentional Discrimination and Deliberate Indifference.**

19    The parties do not dispute that S.Y. has a qualifying disability under the ADA and the

20    Rehabilitation Act. Additionally, it is undisputed that the District has received federal education

21    funding with respect to Snell's Rehabilitation Act claim. The dispute between the parties boils

22    down to whether or not S.Y. was excluded or otherwise denied a public education by the District

23    based on her disabilities. The District is liable for violating the ADA and Section 504 if it failed

24

1  to provide S.Y. with a reasonable accommodation that she needed to enjoy meaningful access to

2  a public education and did so with deliberate indifference. *See Lemahieu*, 513 F.3d at 937–38.

3        The parties' arguments appropriately focus on the District's alleged deliberate

4  indifference and the reasonableness of the accommodations provided by the District.[5] The

5  District argues that Snell's ADA and Section 504 claims fail as a matter of law because "there is

6  no evidence that there was any intentional discrimination or deliberate indifference" as required

7  to recover damages in the Ninth Circuit. The District also contends that it reasonably offered to

8  accommodate S.Y.'s disability through a transfer to another elementary school, and that Snell

9  refused this accommodation. Snell argues that email correspondence between Dr. de Give and

10  District employees demonstrate the district's deliberate indifference and discriminatory intent

11  towards her daughter. Snell also asserts that the proposed transfer was not a reasonable

12  accommodation.

13  **D.  There is evidence of deliberate indifference.**

14        The District argues that, even viewed in the light most favorable to Snell, the evidence

15  does not support an inference of the intentional discrimination or deliberate indifference required

16  under the ADA or Section 504. Snell argues that an email exchange between Dr. de Give and

17  District employees is ample evidence from which a jury could find the District was deliberately

18  indifferent to S.Y.'s need for one-on-one nursing care. Dr. de Give told District employees that

19  such a nursing arrangement was not required for diabetes and would be difficult to provide:

20            "I just cannot see a 1:1 nurse for this child."

21  

22      [5] The District also argues that Snell has failed to establish "that S.Y. was denied any
benefits to which she was entitled under Section 504." This argument is without merit as Snell's

23  complaint and supporting materials allege that the District deprived S.Y. of access to the full
benefits of a public education by failing to provide for her diabetic monitoring and hearing needs

24  at school.

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 9

1
2
> "[S.Y.] does not require 1:1 medical support unless grandma refuses to come…. And I cannot hire someone to do just that—no agency has someone who would be available for such limited time."

3  Mindenbergs Decl. Exs. 1A, 1D, [Dkt. #42 at 4, 13].

4      The first element of the deliberate indifference test is satisfied when the public entity has

5  notice that an accommodation is required. *See Lovell*, 303 F.3d at 1056. Here, the District had

6  been educating S.Y. since kindergarten and was well aware S.Y. needed accommodation of her

7  diabetes and hearing impairment.

8      The second element of deliberate indifference is met if the school's failure to address

9  S.Y.'s needs involves an element of deliberateness. *Id.* Viewing the emails and the remaining

10  evidence in the light most favorable to Snell, a reasonable jury could find that the District was

11  deliberately indifferent to S.Y.'s disability because it did not act to address her medical needs.

12  Snell has therefore raised a genuine issue of material fact that precludes the District's Motion for

13  Summary Judgment on her deliberate indifference claim.

14  **E.  Reasonable Accommodations.**

15      A plaintiff can establish violations of the ADA and Section 504 by showing that a public

16  entity denied her a reasonable accommodation. *See Hamamoto*, 620 F.3d at 1096. Snell argues

17  that the evidence supports her claim that the District failed to provide S.Y. reasonable

18  accommodations needed to address her medical conditions. The District argues that its offer to

19  move S.Y. to another school was reasonable as a matter of law.

20      The District emphasizes that the ADA does not require it to grant any requested

21  accommodation; it requires instead that the District make *reasonable* accommodations. *See*

22  *Enriching, Inc. v. City of Fountain Valley*, 151 F. App'x 523, 524 (9th Cir. 2005). "Reasonable

23  accommodation does not require an organization to make fundamental or substantial alterations

24  to its programs." *Hamamoto*, 620 F.3d at 1098 (citing *Alexander v. Choate*, 469 U.S. 287, 300–

1  01 (1985)). This does not mean, however, that any accommodation the District offers will

2  suffice; the District "must consider the particular individual's need when conducting its

3  investigation into what accommodations are reasonable." *Lovell*, 303 F.3d at 1056.

4        The District argues that it provided a reasonable accommodation in attempting to transfer

5  S.Y. to Lacey Elementary where she would receive diabetic monitoring from a licensed nurse.

6  The District claims that Snell refused this reasonable accommodation. Snell argues that the short

7  timeline for the transfer to Lacey was inadequate to ensure a safe transition for her daughter.

8  Snell further contends that the reasonableness of the transfer to Lacey is a question of fact for the

9  jury.

10        What may have been a reasonable accommodation in transferring S.Y. to Lacey

11  Elementary was made less reasonable by the manner in which the District presented the

12  accommodation. The District allotted just two days to transition a student with significant health,

13  learning, and behavioral issues to a new school. The District argues this rushed transition was a

14  result of the ultimatum that Snell placed upon the District with her October letter indicating she

15  and her mother would no longer serve as PDAs. But the District ignores the fact that Snell and

16  her mother were serving as PDAs against their own wishes because the District had yet to

17  provide adequate diabetic care for her daughter. While enrolling S.Y. at Lacey might have been a

18  reasonable solution had the District offered this option at the beginning of the school year or

19  allowed adequate time for S.Y. to transition to a new school, the way in which the District

20  attempted to facilitate the transfer left Snell with legitimate concerns. Viewing this evidence in

21  the light most favorable to Snell, a reasonable juror could conclude that transferring a student

22  with significant health, learning, and behavioral challenges to a new school with only two days

23

24

1   to prepare for the transition was not reasonable. Accordingly, the District's Motion for Summary

2   Judgment on the reasonableness of the transfer accommodation is DENIED.

3          Additionally, the parties dispute the reasonableness of seating a paraeducator next to S.Y.

4   in lieu of a functioning voice amplification system. Snell claims that the District's solution made

5   S.Y. more dependent on constant one-on-one adult assistance in contravention of the goals of her

6   IEP. The District maintains that providing a paraeducator was a reasonable solution to ensure

7   S.Y. would be able to understand and fully participate in classroom activities.

8          Given the stated goal in S.Y.'s IEP of increasing her independent development, Snell has

9   raised a genuine issue of material fact with respect to the District's accommodation of S.Y.'s

10  hearing loss. Where reasonable minds could differ on the material facts at issue, summary

11  judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). The

12  reasonableness of the District's accommodation of S.Y.'s hearing loss is a question of fact for

13  trial and the Motion for Summary Judgment is DENIED.

14  **F.  Washington Law Against Discrimination.**

15         Snell's third discrimination claim is under the WLAD. The parties' arguments here are

16  largely similar to their ADA and Rehabilitation Act arguments. Snell argues that the District's

17  failure to provide a qualified person to monitor her daughter's blood sugar levels denied her

18  daughter equal access to a public education afforded to non-disabled students. The District

19  contends that Snell's WLAD claim fails because she has not demonstrated that S.Y. did not

20  receive treatment comparable to non-disabled students.

21         The WLAD protects "the right to the full enjoyment of any of the accommodations,

22  advantages, facilities, or privileges of any place of public resort, accommodation, assemblage, or

23  amusement," RCW 49.60.030(1)(b), and further provides that it is an unfair practice to

24  discriminate in a place of public accommodation. *See* RCW 49.60.215. To make a prima facie

1   claim of discrimination under the WLAD, the plaintiff must show: (1) the plaintiff is disabled;

2   (2) defendant's establishment is a place of public accommodation; (3) disabled persons are not

3   provided services comparable to those provided to non-disabled persons by or at the place of

4   public accommodation; and (4) the disability was a substantial factor causing the discrimination.

5   *Duvall*, 260 F.3d at 1135 (citing *Fell v. Spokane Transit Auth.*, 128 Wash. 2d 618, 637, 911 P.2d

6   1319 (Wash. 1996) (en banc)). Although the WLAD similarly prohibits discrimination on the

7   basis of disability, unlike Snell's ADA and Rehabilitation Act claims, the WLAD does not

8   require a showing of intentional discrimination. *See id.* at n.10 ("The WLAD differs from Title II

9   of the ADA and § 504 of the Rehabilitation Act in that it does not require a showing of

10  intentional discrimination in suits for money damages.").

11          The first two elements of Snell's WLAD claim are easily met. As with the ADA and

12  Section 504 claims above, it is uncontested that S.Y. has a qualifying disability under the

13  WLAD. Additionally, public schools are public facilities for the purpose of the WLAD. *See*

14  RCW 49.60.040(2); *see also* WAC §162-28-030. The District reasserts its arguments above and

15  contends that Snell's WLAD claim fails as a matter of law because "Plaintiffs cannot

16  demonstrated [sic] that they were discriminated against, or that they did not receive a comparable

17  level of treatment to that of non-disabled individuals." Defs.' Mot. Summ. J., [Dkt. #35 at 23].

18          The District's conclusory statement is unconvincing as to whether S.Y. received a

19  comparable education. "A moving party may not require the non-moving party to produce

20  evidence supporting its claim or defense simply by saying that the non-moving party has no such

21  evidence." *Nissan Fire and Marine Insurance Company, Ltd. V. Fritz Companies*, Inc., 210 F.3d

22  1099, 1105 (9th Cir. 2000). Snell argues that the District's failure to provide a qualified person to

23  monitor her daughter's blood sugar levels excluded her from public school, denying her equal

24

1  access to a public education afforded to non-disabled students.  As with her ADA and Section

2  504 claims, Snell asserts sufficient facts that preclude the District's Motion for Summary

3  Judgment on the WLAD claim.

### III. CONCLUSION

5      Viewed in the light most favorable to her, the evidence supports Snell's claims. *See*

6  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). These contested factual issues preclude the

7  District's Motion for Summary Judgment on Snell's ADA, Rehabilitation Act, and WLAD

8  claims. Accordingly, the Defendants' Motion for Summary Judgment is DENIED.

9      IT IS SO ORDERED.

10      Dated this 21st day of October, 2015.

Ronald B. Leighton
United States District Judge